**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7                    IN THE UNITED STATES DISTRICT COURT

8              FOR THE NORTHERN DISTRICT OF CALIFORNIA

9                            SAN JOSE DIVISION

10   UNITED STATES OF AMERICA,                CASE NO. 5:11-cr-00414 HRL

11                                            **ORDER AFFIRMING DECISION OF**
                            Plaintiff(s),     **MAGISTRATE JUDGE**
12        v.

13   JEREMY BEST,
                                              [Docket Item No(s). 33]
14
                            Defendant(s).
15   _____/

16        Appellant Jeremy Best ("Appellant") appeals his conviction after a bench trial of trespassing

17   upon a national wildlife refuge in violation of 50 C.F.R. § 26.21(a). Specifically, Appellant argues

18   the magistrate judge erred in a pretrial ruling designating § 26.21(a) as a strict liability crime when

19   punishment is sought under subsection (2) of 16 U.S.C. § 668dd(f). Appellant also contends that the

20   evidence at trial was insufficient to support the conviction under the appropriate *mens rea*.

21        This court agrees with Appellant's first argument, but disagrees with the second. The

22   judgment will therefore be affirmed.

23              **I.    FACTUAL AND PROCEDURAL BACKGROUND**

24        On June 28, 2011, the Government filed a two-count information charging Appellant with

25   violations of 50 C.F.R. § 26.21(a) (trespassing on a national wildlife refuge) and 50 C.F.R. § 27.81

26   (under the influence of alcohol in a national wildlife refuge), both Class B misdemeanors. The

27   Government alleged that Appellant, while intoxicated, unlawfully entered the Don Edwards National

28   Wildlife Refuge (the "refuge") located adjacent to Alviso, California. For the trespassing violation,

1

**United States District Court**
For the Northern District of California

1  the Government sought punishment under 16 U.S.C. § 668dd(f)(2).[1]

2      The magistrate judge assigned to the matter held a pretrial conference on November 15,

3  2011.  At the conference, the parties disputed whether § 26.21(a) constituted a strict liability offense

4  or required some proof of *mens rea* when only § 668dd(f)(2) is invoked.  After hearing argument on

5  the issue, the magistrate judge ruled in favor of the Government and found, based on his

6  interpretation of § 668dd(f)(2), that § 26.21(a) was a strict liability offense under the circumstances.

7      The parties then appeared for a bench trial before the magistrate judge on November 17,

8  2011.  The Government called two witnesses, Special Agent Alfred Colby, an investigator for the

9  United States Fish and Wildlife Service, and Jared Klein, an officer for the national refuge system.

10  Special Agent Colby testified that he was hunting in the Gold Street Ponds area of the refuge on the

11  morning of November 28, 2010, when he observed Appellant about three to four hundred yards

12  away, in an area known as Guadalupe Slough, "dressed in dark clothing, screaming and yelling and

13  dancing around."  Due to what he perceived as Appellant's unusual conduct, Special Agent Colby

14  called Officer Klein and instructed him to engage Appellant.  According to Special Agent Colby, the

15  Gold Street Ponds area and Guadalupe Slough were not open to the public and were only accessible

16  to individuals with a permit.

17      Officer Klein testified that he drove to Appellant's location within the non-public area of the

18  refuge after making contact with Special Agent Colby.  He followed footprints in the mud in order to

19  meet Appellant.  Officer Klein described Appellant as muddy and disheveled with "a very strong

20  odor of alcoholic beverage emanating from him."  During their interaction, Appellant told Officer

---

22      [1] That section provides:

23          (f) Penalties.
24          (1) Knowing violations. Any person who knowingly violates or fails to
            comply with any of the provisions of this Act or any regulations issued
25          thereunder shall be fined under title 18, United States Code, or
            imprisoned for not more than 1 year, or both.
26          (2) Other violations. Any person who otherwise violates or fails to
            comply with any of the provisions of this Act (including a regulation
27          issued under this Act) shall be fined under title 18, United States
            Code, or imprisoned not more than 180 days, or both.

28  16 U.S.C. § 668dd(f).

2

CASE NO. 5:11-cv-00414 EJD
ORDER AFFIRMING DECISION OF MAGISTRATE JUDGE

1   Klein that he had been on a party bus the night before and was attempting to walk from Milpitas to

2   Menlo Park because his friend had abandoned him.  During the trip out of the refuge, Appellant

3   showed Officer Klein a section of the fence he had jumped in order to access the Gold Street Ponds

4   area.  After providing Appellant with water and information about transportation, he issued

5   Appellant a citation for trespassing.

6        Appellant called two witnesses during his portion of the case.  Douglas Cole, an investigator,

7   testified that he went to the visitors center at the refuge where he was told by staff that a permit was

8   not required to walk along levees within the refuge.  Cole also found two entry gates open at the

9   refuge, and did not see signs identifying the area as a federal wildlife refuge or describing a permit

10  requirement.

11       Appellant also testified.  During examination by his attorney, he stated that on the evening of

12  November 27, 2010, he took a party bus with a group of people from Menlo Park to Milpitas to

13  attend a party.  He left the party at 3:00 a.m. after a disagreement with his friend and began walking

14  from Milpitas back to Menlo Park.  Appellant started by walking along Interstate 880, crossed under

15  the highway, and hopped over a fence.  At approximately 6:30 or 7:00 a.m., Appellant arrived in

16  Alviso and attempted to buy a cigar from a liquor store but was unsuccessful because he did not

17  have identification.  He then continued walking along railroad tracks until he reached the Gold

18  Street Entrance to the refuge.  Appellant then hopped over another fence "onto the adjacent private

19  properties" and walked along the levee trail for approximately three hours.  During that time,

20  Appellant saw hunters and other individuals walking around.  He was dehydrated and drank sea

21  water which made him even more dehydrated.  Eventually, Appellant stopped to sleep and was

22  found by Officer Klein.

23       On cross examination, Appellant agreed that the area where he was found is part of the

24  refuge, that a permit is required to access the area, and that Appellant did not have a permit in

25  November, 2010.  In addition, Appellant admitted the second fence he jumped in order to access the

26  Guadalupe Slough was covered with barbed wire.

27       After hearing closing arguments, the magistrate judge found Appellant guilty of trespassing

28  on the refuge in violation of § 26.21(a) and not guilty on the charge under § 27.81.  Judgment was

United States District Court

For the Northern District of California

3

1   thereafter entered on April 6, 2012.  This appeal followed.

2                              **II.   DISCUSSION**

3       **A.    *Mens Rea***

4          Appellant assigns error to the magistrate judges' pretrial determination designating violation

5   of 50 C.F.R. § 26.21(a) as a strict liability offense when punishment is pursued under subsection (2)

6   of 16 U.S.C. § 668dd(f).  This court reviews that determination *de novo*.  United States v. Semenza,

7   835 F.2d 223, 224 (9th Cir. 1987).

8          Appellant was convicted of violating 50 C.F.R. § 26.21(a), which provides:

9               No person shall trespass, including but not limited to entering,
                occupying, using, or being upon, any national wildlife refuge, except
10              as specifically authorized in this subchapter C or in other applicable
                Federal regulations.

11

12         Notably, § 26.21(a) does not require intent on its face.  Based on this, the Government

13  concludes that the regulation does not carry with an element of *mens rea*.  That superficial reading,

14  however, cannot be accepted.  The mere omission of a *mens rea* requirement from the regulation

15  does not necessarily mean that it should be construed as eliminating that element from the crime

16  altogether.  Morissette v. United States, 342 U.S. 246, 263 (1952).  Instead, further inquiry into §

17  26.21 is required.  See United States v. Balint, 258 U.S. 250, 252 (1922) (explaining that where a

18  statute is silent as to *mens rea*, "[t]he question . . . is one of the construction of the statute and of

19  inference of the intent of Congress.").

20         The court must apply established rules of statutory construction in order to accomplish this

21  task.  The analysis "begins with the 'language of the statute.'  And where the statutory language

22  provides a clear answer, it ends there as well."[2]  Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 438

23  (1999).  To define the language, the statute must be considered as a whole, including its purpose and

24  various provisions.  K Mart Corp. v. Cartier, Inc., 486 U.S. 281, 291 (1988) ("In ascertaining the

25  plain meaning of the statute, the court must look to the particular statutory language at issue, as well

26

27         ───────────────────────

28         [2] The fact that a regulation rather than a statute is at issue is of no moment for the purpose of
    statutory construction.  The same principles of interpretation apply.  W. Radio Servs. Co. v. Qwest
    Corp., 678 F.3d 970, 984 (9th Cir. 2012).

                                        4

    CASE NO. 5:11-cv-00414 EJD
    ORDER AFFIRMING DECISION OF MAGISTRATE JUDGE

**United States District Court**
For the Northern District of California

as the language and design of the statute as a whole."). Words should be given "their plain, natural, ordinary and commonly understood meanings," United States v. Romo-Romo, 246 F.3d 1272, 1275 (9th Cir. 2001), in order to "give effect, if possible, to every clause and word of a statute rather than to emasculate an entire section." Bennett v. Spear, 520 U.S. 154, 173 (1997). In addition, federal statutes are interpreted in light of the common law. Theofel v. Farey-Jones, 359 F.3d 1066, 1072 (9th Cir. 2003).

An evaluation of § 26.21 also requires the observance of certain basic concepts of criminal law. The first is that "[t]he existence of a *mens rea* is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence." Dennis v. United States, 341 U.S. 494, 500 (1951); see also United States v. United States Gypsum Co., 438 U.S. 422, 436 (1978). This particular tenet, "that an injury can amount to a crime only when inflicted by intention," is "universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil." Morissette v. United States, 342 U.S. 246, 250 (1952). Statutes must therefore be construed "in light of the background rules of the common law in which the requirement of some *mens rea* for a crime is firmly embedded." Staples v. United States, 511 U.S. 600, 605 (1994) (citation omitted).

The second is that crimes disposing of a *mens rea* element, or strict liability crimes, are generally disfavored in the legal system. Id. at 605-606 (1994); United States v. Torres-Flores, 502 F.3d 885, 889 n. 5 (9th Cir. 2007). Due to the strength of this disfavor, the United States Supreme Court has "suggested that some indication of congressional intent, express or implied, is required to dispense with *mens rea* as an element of a crime." Staples, 511 U.S. at 606.

Third, the crime of trespass, and more specifically trespass to land, is generally classified as an intentional tort. Stuart M. Speiser, Charles F. Krause & Alfred W. Gans, The American Law of Torts 7 (2011) ("Trespass is an intentional harm; that is, where there is no intentional act, in the sense of an act voluntarily done, there is no trespass although it is not essential that the defendant act designedly if the injury is the immediate result of the force applied by him or her."); Restatement (Second) of Torts § 158 cmt. f (1965) ("Tort liability is never imposed upon one who has neither done an act nor failed to perform a duty . . . . one whose presence on the land is not caused by any

5

United States District Court
For the Northern District of California

act of his own or by a failure on his part to perform a duty is not a trespasser.").  "The intent required as a basis for liability as a trespasser is simply an intent to be at the place on the land where the trespass allegedly occurred."  W. Keeton, D. Dobbs, R. Keeton, & D. Owen, <u>Prosser and Keeton on the Law of Torts</u> §13, p. 73 (5th ed. 1984).

Applying the rules of statutory construction to § 26.21(a) with these principles in mind, it becomes clear that the interpretation attributed by the magistrate judge is unsustainable.  To begin, the regulation's purpose is obvious: to prevent damage to protected lands by controlling and limiting the individuals that may have access to those lands.  In order to accomplish that goal, the Secretary of the Interior chose a particular term in promulgating the regulation - trespass - rather than prohibiting entries in general.  The Secretary's choice to utilize a common law crime is significant, particularly since the word carries with it a distinct legal definition.  <u>See</u> <u>SEC v. McCarthy</u>, 322 F.3d 650, 656 (9th Cir. 2003) ("Congress's explicit decision to use one word over another in drafting a statute is material.").

Moreover, nothing in § 26.21(a) signifies a conscious aim by the Secretary to eviscerate "trespass" of its traditional meaning.  Although the Government argues that much can be gleaned from the phrase which follows the reference to trespass ("including but not limited to entering, occupying, using, or being upon, any national wildlife refuge"), the only interpretation which passes muster under the rules of statutory construction is one which classifies that phrase as an illustrative list rather than an exclusive definition.  <u>See</u> <u>Ramirez, Leal & Co. v. City Demonstration Agency</u>, 549 F.2d 97, 104 (9th Cir. 1976) (noting that the phrase "including but not limited to" is often used to mitigate the rule of statutory construction that general words are to be construed as only applying to a specific list).  To accept the Government's suggestion that the common law meaning of "trespass" as used in § 26.21(a) should be so drastically modified by the four instances of entry which follow it is to leave the Secretary's chosen term superfluous and meaningless.  <u>See</u> <u>Boise Cascade Corp. v. United States Envtl. Prot. Agency</u>, 942 F.2d 1427, 1432 (9th Cir. 1991) ("Under accepted canons of statutory interpretation, we must interpret statutes as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous.").  In that regard,

CASE NO. 5:11-cv-00414 EJD
ORDER AFFIRMING DECISION OF MAGISTRATE JUDGE

United States District Court

For the Northern District of California

1    comparison of this case to <u>United States v. Mowat</u>, 582 F.2d 1194 (9th Cir. 1978), is misplaced.[3]

2         But this court must still reconcile § 26.21(a) with § 668dd(f), which separates penalties for

3    "knowing" violations from penalties for all other violations.  Its effect on § 26.21(a) is not apparent

4    from the language of § 668dd(f)  alone since the punishment provisions apply to a number of other

5    statutes and regulations.  The court must therefore examine the legislative history.

6         "[T]he authoritative source for finding the Legislature's intent lies in the Committee Reports

7    on the bill, which '[represent] the considered and collective understanding of those Congressmen

8    involved in drafting and studying proposed legislation.'" <u>Garcia v. United States</u>, 469 U.S. 70, 76

9    (1984) (quoting <u>Zuber v. Allen</u>, 396 U.S. 168, 186 (1969)).  Here, the 1998 Senate Report indicates

10   that the amendment separating § 668dd(f) into two subsections was introduced to "reduce[] the

11   penalty for unintentional violations of the National Wildlife Refuge System Administration Act"

12   since, as it was enacted, "all violations of the act are class A misdemeanors, regardless of whether or

13   not it was an intentional violation."  According to Senator Chafee, "unintentional violations" would

14   thereafter be a class B misdemeanor.  S. Rep. No. 105-145, at 12438 (1998).  The comments from

15   the House of Representatives echo this intent.  H. Rep. No. 105-142, at 10475 (1998).  Neither the

16   Senate nor the House stated that the purpose of the amendment was to create an entire species of

17   strict liability crimes.[4]  As such, the interpretation of the Government and adopted by the magistrate

18   judge is left unsupported in the congressional record.

19        In the absence of a more instructive comment from Congress, the clarification of penalties

20   between intentional and unintentional violations cannot be equated with differentiating between

21   intentional and strict liability violations.  <u>Semenza</u>, 835 F.2d at 224 ("Absent a clear indication of

22

23   _____

24       [3] In <u>Mowat</u>, the instruction at issue did not contain the term "trespass;" it instead prohibited
     non-military personnel from entering or remaining upon Kahoolawe Island.  582 F.2d at 1198.  The
25   instruction also precluded anyone acting "for any purpose prohibited by law or lawful regulation."
     <u>See id</u>.  Based on these characteristics, the Ninth Circuit could easily determine that specific intent
26   was not required since the instruction "on its face prohibits entry regardless of purpose," particularly
     because "the statute avoids the use of the word 'trespass.'" <u>Id</u>. at 1203.

27       [4] Although not directly applicable to the present question, it is noteworthy that the
     amendment to § 668dd(f) was introduced along with an amendment to *eliminate* strict liability
28   language from the Migratory Bird Treaty Act, 16 U.S.C. § 704.  S. Rep. No. 105-145, at 12438
     (1998).

7

United States District Court
For the Northern District of California

1  legislative intent, courts should be reluctant to dispense with a *mens rea* requirement.").  At the same

2  time, however, neither specific intent, general intent nor recklessness fits within the legislative

3  history of §668dd(f) and in particular Congress' use of "unintentional" to describe the class of

4  violations punished under subsection (2) of § 668dd(f).  In context, "unintentional" seems more akin

5  to simple negligence, similar to that which is required to sustain a civil tort claim.  That form of

6  *mens rea* appropriately mediates between the congressional record and the traditional assumption

7  that all crimes require some form of intent.  Were the court to concur with the interpretation of the

8  magistrate judge, what would be left is a regulation which criminalizes all entries onto protected

9  refuges, even those in which the Government cannot prove how the individual entered the area.

10  That cannot be.  While negligence is not a burdensome *mens rea* to prove, it nonetheless requires

11  some species of proof.

12      In construing § 26.21(a), this court concludes that the regulation does not provide for a strict

13  liability crime, even when the Government intends only to seek punishment under § 668dd(f)(2).

14  The magistrate judge therefore erred in deciding as much.[5]  The court further concludes that the

15  *mens rea* applicable to § 26.21(a), at least when pursued under the § 668dd(f)(2), is simple

16  negligence such that the Government must prove "an act which the actor as a reasonable man should

17  recognize as involving an unreasonable risk of causing an invasion of an interest of another."

18  Restatement (Second) of Torts § 284 (1965).

19          **B.      Sufficiency of the Evidence**

20          The question now becomes whether Appellant's conviction can be sustained.  This court

21  reviews *de novo* the sufficiency of the evidence to support the conviction.  United States v. Parker,

22  651 F. 3d 1180, 1182 (9th Cir. 2011).  The evidence is sufficient if, viewing the evidence in the light

23  most favorable to the prosecution, any rational trier of fact could have found the essential elements

24  of the crime beyond a reasonable doubt.  Id.

25

26          [5] The court also rejects the Government's contention that § 26.21(a) can be classified as a

27  "public welfare offense" because the regulation's use of the term "trespass" is one taken over from
common law not otherwise defined by regulation itself.  See Holdridge v. United States, 282 F.2d

28  302, 310 (8th Cir. 1960) (holding that, in order to dispose of criminal intent as a required element, a
statute must not incorporate a common law crime).

1    Under § 26.21(a), the Government was required to prove that: (1) Appellant entered the

2    refuge, (2) that Appellant should have reasonably recognized that his conduct would cause an

3    invasion of an interest of another, and (3) that Appellant's entry was not authorized.  The first and

4    third elements are easily established by the testimony of Special Agent Colby and Officer Klein,

5    who each designated the areas of the refuge that were closed to public access.  They also testified to

6    observing Appellant on the Guadalupe Slough within the closed area, and Appellant himself testified

7    to the path he took to enter the area.  Appellant also testified that he did not have a permit to be on

8    the refuge.[6]

9    For the second element, the magistrate judge made a finding that "a prudent person should

10   recognize when they jump the fence, and when they jump another fence, that they are probably

11   entering an area or areas where they aren't welcomed."  That finding is supported by Appellant's

12   testimony that he did indeed overcome two fences - one with barbed wire - in order to continue on

13   his journey to Menlo Park before he was ultimately spotted by Special Agent Colby and retrieved by

14   Officer Klein.  Thus, the record contains sufficient evidence to support the magistrate judge's

15   finding that Appellant's conduct, as described by Appellant during his own testimony, was

16   negligent.

17   Viewing the evidence in the light most favorable to the Government, the court concludes that

18   a rational trier of fact could conclude beyond a reasonable doubt that Appellant violated § 26.21(a),

19   even with the added burden of proving negligence as the requisite *mens rea*.  This is true despite the

20   magistrate judge's erroneous determination of strict liability.  Accordingly, the judgment will be

21   affirmed.

22   //

23   //

24

25      [6] Appellant argues that in order to sustain the conviction the evidence must show that he
received actual or constructive notice that the area was a protected refuge.  That contention,
26   however, is inconsistent with the distinction between "knowing" and "other" violations contained in
§ 668dd(f).  If proof of that degree was required in every case, all violations § 26.21(a) would
27   necessarily be "knowing" violations under § 668ff(f)(1).  Neither § 26.21(a) nor § 668ff(f) can be
interpreted in that way since doing so would render superfluous subsection (2) of § 668ff(f), and
28   would be inconsistent with the express intent of Congress in amending that section.  See Boise
Cascade Corp., 942 F.2d at 1432.

9

CASE NO. 5:11-cv-00414 EJD
ORDER AFFIRMING DECISION OF MAGISTRATE JUDGE

**United States District Court**
For the Northern District of California

**III.    DISPOSITION**

The judgment of conviction is AFFIRMED.

**IT IS SO ORDERED.**

Dated:  July 24, 2012

_____
EDWARD J. DAVILA
United States District Judge

CASE NO. 5:11-cv-00414 EJD
ORDER AFFIRMING DECISION OF MAGISTRATE JUDGE

United States District Court
For the Northern District of California